**PELTON GRAHAM LLC**
Brent E. Pelton
Taylor B. Graham
111 Broadway, Suite 1503
New York, NY 10006
Telephone: (212) 385-9700
www.peltongraham.com

*Attorneys for Plaintiffs and the putative FLSA Collective and Class*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **GEORGE GARCIA and SALVATORE SALAMONE, Individually and On Behalf of All Others Similarly Situated,**<br><br>**Plaintiffs,**<br><br>**-against-**<br><br>**D'ONOFRIO GENERAL CONTRACTORS CORP., SCC INDUSTRIES CORP., SUB-TECH SERVICES, LLC, DOES NO. 1 through NO. 20, Jointly and Severally,**<br><br>**Defendants.** | **Case No. 1:25-cv-10245**<br><br>**AMENDED CLASS & COLLECTIVE ACTION COMPLAINT** |

Plaintiffs George Garcia and Salvatore Salamone (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, as collective and class representatives, upon personal knowledge as to themselves and upon information and belief as to other matters, allege as follows:

## NATURE OF THE ACTION

1. Defendant D'Onofrio General Contractors Corp. (hereinafter "D'Onofrio") is a corporation that works on heavy infrastructure projects, including but not limited to, infrastructure, utility, roofing, building restoration, and marine and harbor structures. (https://www.donofrio.biz/index.html).

2. Upon information and belief, throughout the relevant time period, D'Onofrio has contracted with Consolidated Edison Company of New York, Inc., US Power Generating Co., PSEG, and National Grid, to provide construction, repair, excavation, and maintenance of gas lines, electricity and other public utility systems. (https://www.donofrio.biz/index.html).

3. Plaintiffs and members of the putative collective and class are laborers, mechanics, drivers, operators, operating engineers, teamsters, and foremen who furnished labor to Defendants at D'Onofrio's yards and on construction, utility, excavation, and related projects in the greater New York City area.

4. Throughout the relevant period, D'Onofrio enforced a uniform mandatory Yard-Reporting Policy requiring Plaintiffs and the Collective and Class Members to report to one of D'Onofrio's Yards or other off-site locations, such as parking areas, approximately one (1) hour before the scheduled job-site start time. Plaintiffs and the Collective and Class Members were typically prohibited from reporting directly to job sites due to the mandatory work required at the Yard each morning. In particular, at the Yard, foremen distributed work assignments and required employees to load materials and equipment needed for the day. These pre-shift activities were integral and indispensable to Defendants' construction operations.

5. Although certain Plaintiffs and Collective and Class Members occasionally received additional payment in cash for "travel time," this off-the-books payment represented only a fraction of the off-site hours worked by these individuals. This off-the-books cash payment demonstrates D'Onofrio's willful failure to record or pay for all required work, which were hours worked in excess of forty (40) hours in a week, for which they should have been paid overtime premiums. Regardless of whether Class Members received these modest "travel time" payments, they were consistently paid for fewer hours than they actually worked.

6. Plaintiffs bring this action to recover unpaid overtime pay owed to them and to the

Collective and Class Members pursuant to both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and the New York Labor Law ("NYLL"), §§ 650 *et seq*.

7. Plaintiffs bring their FLSA overtime claims on behalf of themselves and all other similarly situated employees of Defendants and their NYLL unpaid wage claims on behalf of themselves and a Federal Rule of Civil Procedure 23 class of all laborers, mechanics, drivers, operators, operating engineers, teamsters, and foremen, employed by Defendants during the six (6)-year, period plus COVID-19 tolling, preceding the filing of this complaint.

**JURISDICTION AND VENUE**

8. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337 and 1343, and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

9. In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 201 *et seq*.

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this district.

11. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

12. On March 20, 2020, New York Governor Andrew M. Cuomo signed Executive Order 202.8 in an effort to stem the spread of COVID-19, which tolls for thirty (30) days "any specific time limit[s] for the commencement, filing, or service of any legal action, notice, motion or other process or proceeding" under any New York State laws or court procedural rules. The thirty (30)-day tolling period began on March 20, 2020 and continued until April 19, 2020. On April 7, 2020, Governor Cuomo signed Executive Order 202.14, which extended the tolling period to May 7, 2020. Subsequently, on May 7, 2020, Governor Cuomo issued Executive Order 202.28,

tolling all statutes of limitations for an additional thirty (30) days through June 6, 2020. On June 6, 2020, Governor Cuomo issued Executive Order 202.38, tolling all statutes of limitations until July 6, 2020. On July 7, 2020, Governor Cuomo issued Executive Order 202.48 tolling all statutes of limitations until August 5, 2020. On August 5, 2020, Governor Cuomo issued Executive Order 202.55, which tolled all statutes of limitations until September 4, 2020. On September 4, 2020, Governor Cuomo signed Executive Order 202.60, which extended the tolling period an additional thirty (30) days to October 4, 2020. On October 4, 2020, Governor Cuomo issued Executive Order 202.67, which extended the tolling period to November 3, 2020. In total, the Executive Orders set forth herein provided for a toll of two hundred and twenty-eight (228) days.

## THE PARTIES

**Plaintiffs:**

13. **George Garcia** ("Garcia") was, at all relevant times, an adult individual residing in Westchester County, New York.

14. Garcia worked for Defendants from in or around April 2023, until in or around September 12, 2025 (the "Garcia Employment Period").

15. Throughout the Garcia Employment Period, Garcia worked as a laborer and as a driver.

16. Throughout the Garcia Employment Period, Garcia was a member of the Laborer's Union Local 731 ("Local 731").

17. From the beginning of Garcia Employment Period until approximately September 2024, Garcia typically worked a day shift, between six (6) to seven (7) days per week, from 6:00

a.m. to between approximately 4:30 p.m. to 5:00 p.m., and sometimes later, for a total of approximately sixty (60) to seventy (70) hours per week, including work he was required to perform at D'Onofrio's Yard for which he was not compensated.

18. From approximately October 2024 until May 2025, Garcia typically worked a night shift, either from 7:00 p.m. to 7:00 a.m. a twelve-hour (12) "double" shift, or from 10:00 p.m. to 6:00 a.m., an eight (8) hour shift. These shifts also included the requirement to report one (1) hour early at one of the D'Onofrio's Yards, which time was not compensated.

19. From approximately June 2025 until the end of Garcia Employment Period, Garcia returned to the day shift, with the hours detailed in paragraph 17 above.

20. Throughout the Garcia Employment Period, Garcia was paid at or around the Local 731 laborer union wage rate. At the time he left his employment with Defendants, in approximately September 2025, he was receiving approximately forty-five dollars ($45.00) per hour, plus benefits, for hours worked on the jobsite.

21. Throughout the Garcia Employment Period, Garcia primarily performed work for Defendants out of D'Onofrio Yards located at 470 Barretto St. Bronx, New York 10474, 337 Manida St. Bronx, New York 10474 (together, the "Bronx Yards"), and 124 47th St. Brooklyn, New York 11232 (the "Brooklyn Yard" and together with the Bronx Yards, the "D'Onofrio's Yards" or the "Yards"), and on projects at several different locations including in the Bronx, Brooklyn, and Manhattan. These Yards were mandatory reporting locations for all crews, and neither Garcia nor the Collective and Class Members were permitted to report directly to job sites.

22. Garcia consents in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b), and his consent form is attached hereto and is incorporated herein.

23. **Salvatore Salamone** ("Salamone") is an adult individual residing in Fairfield County, Connecticut.

24. Salamone worked for Defendants from in or around January 20, 2025, until in or around December 4, 2025 (the "Salamone Employment Period"). Throughout the Salamone Employment Period, Salamone worked as an operating engineer, operating heavy equipment, including a backhoe.

25. Throughout the Salamone Employment Period, Salamone was a member of Operating Engineers Local 15 ("Local 15").

26. Throughout the Salamone Employment Period, Salamone typically worked seven (7) days per week, picking up his assigned backhoe between 6:15 am and 6:45 am, driving to the his assigned jobsite for the day, and typically remaining on the jobsite to work for approximately eight (8) hours until approximately 3:30 p.m., although he frequently worked beyond this time and sometimes remained on the jobsite until approximately 7:00 p.m.

27. Throughout the Salamone Employment Period, Salamone was paid at or around the Local 15 Operating Engineers union wage rate.

28. Throughout the Salamone Employment Period, Salamone typically picked up his assigned backhoe each morning from a designated parking location near Grand Central Terminal in Manhattan. He was required to transport the backhoe from that location to the jobsite before beginning his workday and was not permitted to report directly to the jobsite without first retrieving the equipment. He was similarly required to transport the backhoe back from the jobsites to the parking location.

29. Defendants typically paid Salamone one (1) hour per day, Monday through Friday, for travel time, yet Salamone typically spent substantially more than five (5) hours per week transporting the backhoe he used. His travel time each way was typically forty-five (45) minutes to one (1) hour, depending upon traffic and the location of the jobsite.

30. Before beginning his employment, Salamone was informed by PJ, the owner's son-

in-law, that he would receive one (1) hour of pay each workday for transporting the backhoe to the jobsite. However, Defendants failed to pay Salamone any wages for travel time for work on Saturdays and Sundays.

31. For example, after completing work on a project located on Park Avenue, Salamone transported the backhoe back to its designated parking location and arrived at approximately 4:20 p.m., although Defendants compensated him only through approximately 3:30 p.m. This occurred on a daily basis throughout the Salamone Employment Period.

32. Salamone complained about Defendants' failure to pay him for weekend transportation time and other uncompensated work. After making those complaints, Defendants stopped scheduling him for weekend work for approximately one and one-half (1.5) months.

33. Defendants tracked equipment through GPS and cameras, including equipment operated by Salamone, but still failed to pay him for all compensable time worked.

34. Salamone consents in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b), and his consent form is attached hereto and is incorporated herein.

**Defendants:**

35. **D'Onofrio General Contractors Corp.** is an active New York corporation with a principal place of business located at 202 28th Street, Brooklyn, New York 11232.

36. According to its corporate filings, D'Onofrio was first registered with the New York State Department of State, Division of Corporations on July 1, 1991.

37. Upon information and belief, D'Onofrio also operates as "D'Onofrio General Contracting Corp."

38. Via its owners, officers, and agents, D'Onofrio supervised daily construction operations, controlled worker schedules, and dictated the mandatory Yard-Reporting Policy applicable to Plaintiffs and the Collective and Class Members.

39. Upon information and belief, D'Onofrio furnishes construction services on various projects under its own name and also under the names of other D'Onofrio's entities, including but not limited to, defendants SCC Industries Corp., and Sub-Tech Services, LLC. (https://edc.nyc/sites/default/files/2020-09/D%27Onofrio%20General%20Contractors%20Corp.pdf)

40. **SCC Industries Corp.** ("SCC Industries") is an active New York corporation with its principal place of business located at 164 27th street, Brooklyn, New York, 11232.

41. According to its corporate filings, SCC first registered with the New York State Department of State, Division of Corporations on September 15, 2022.

42. Upon information and belief, during the relevant time period, SCC Industries has functioned as a subsidiary entity through which D'Onofrio pays portions of its workforce, including Plaintiffs and other similarly situated workers, and managed administrative operations.

43. Upon information and belief, D'Onofrio employees paid by SCC performed work for D'Onofrio at D'Onofrio Yards and jobsites, were directed by D'Onofrio management and supervisors, and in all ways were deemed to be employees of D'Onofrio.

44. **Sub-Tech Services, LLC** ("Sub-Tech") is an active foreign limited liability company authorized to do business in New York, with its principal place of business located at 42 Hamilton Road, Glen Ridge, New Jersey 07028.

45. According to its corporate filings, Sub-Tech was formed in New Jersey on January 16, 2003 and first registered with the New York State Department of State, Division of Corporations on December 08, 2008.

46. Upon information and belief, during the relevant time period, Sub-Tech has functioned as a subsidiary entity through which D'Onofrio pays portions of its workforce, including Plaintiffs and other similarly situated workers, and managed administrative operations.

47. Upon information and belief, D'Onofrio employees paid by Sub-Tech performed

work for D'Onofrio at D'Onofrio Yards and jobsites, were directed by D'Onofrio management and supervisors, and in all ways were deemed to be employees of D'Onofrio.

48. Upon information and belief, D'Onofrio, SCC Industries, and Sub-Tech, (the "Corporate Defendants" or the "D'Onofrio Enterprise") together constituted a single integrated enterprise with centralized control of labor relations, interrelated operations, common management, and shared ownership. Plaintiffs and the Collective and Class members were uniformly treated as employees of D'Onofrio, regardless of which affiliate or subsidiary entity issued their paychecks.

49. **DOES NO. 1 through NO. 20** ("DOE Defendants" and together with the Corporate Defendants the "Defendants") are persons and/or entities whose true names and capacities are presently unknown to Plaintiffs, who therefore sue them by such fictitious names. Plaintiffs are informed and believe and thereon allege that, at all times relevant to this action, each of the fictitiously-named Defendants perpetrated some or all of the wrongful acts alleged herein, are responsible in some manner for the matters alleged herein, and are jointly and severally liable to Plaintiffs and the Collective and Class Members. Plaintiffs will amend this Complaint to allege the true names and capacities of the DOE Defendants when ascertained. Plaintiffs are informed and believe and thereon allege that, at all times relevant to this Complaint, the DOE Defendants are joint employers, working as a joint enterprise with, and are the alter egos of the Corporate Defendants and/or are individuals, which own, operate, and manage the D'Onofrio Enterprise.

50. The individual DOE Defendants participated in the day-to-day operations of the Corporate Defendants and acted intentionally in their direction and control of Plaintiffs and the Defendants' other similarly situated employees, and they are "employers" pursuant to the FLSA, 29 U.S.C. § 203(d), 29 C.F.R. § 791.2, as well as the NYLL § 2 and the regulations thereunder, and they are jointly and severally liable with the Corporate Defendants.

51. At all relevant times, Defendants have been and continue to be a single integrated and/or joint employer engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

52. Upon information and belief, at all relevant times, the Corporate Defendants have had gross revenues in excess of $500,000.00.

53. At all relevant times, Plaintiffs, the opt-in plaintiffs and Class Members were employed by Defendants within the meaning of the NYLL, §§ 2 and 651.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

54. Pursuant to 29 U.S.C. §§ 207 & 216(b), Plaintiffs bring their First Cause of Action as a collective action under the FLSA on behalf of themselves and the following collective:

> All persons employed by D'Onofrio and/or its affiliated entities at any time since December 10, 2022 through the present (the "Collective Action Period") who worked as laborers, mechanics, drivers, operators, operating engineers, teamsters, and foremen in New York State (the "Collective Action Members").

55. A collective action is appropriate because Defendants subjected Plaintiffs and all Collective Action Members to the same unlawful compensation policies, including:

a. mandatory reporting to one of the D'Onofrio Yards or other mandated location approximately one (1) hour before job-site start time;

b. performance of integral and indispensable pre-shift work such as receiving assignments, staging equipment, loading materials, and pre-drive inspections;

c. uncompensated travel between the Yards and job sites;

d. uncompensated transportation of trucks, vehicles, machinery, and heavy equipment between the Yards or other designated reporting locations and the job sites;

e. uncompensated post-shift work, including transporting, returning, parking,

securing, and documenting vehicles, machinery, and heavy equipment after the conclusion of the workday;

f. failure to record all hours worked, including all time worked outside job sites; and

g. failure to pay overtime premiums for hours worked over forty (40) hours in a given workweek.

56. As a result of these policies, Defendants uniformly failed to pay Plaintiffs and the Collective Action Members for substantial daily work performed outside job sites, resulting in systemic underpayment of overtime wages owed to them for hours worked in excess of forty (40) hours per week.

57. Plaintiffs and the Collective Action Members are similarly situated because they were all subject to Defendants' mandatory pre-shift reporting requirements, were prohibited from reporting directly to their assigned job sites, performed compensable pre-shift work for Defendants' benefit, including reporting to designated locations to retrieve vehicles or heavy equipment where applicable, were paid only for on-site work hours with at most a very modest additional payment for "travel time" that did not cover all off-site work, and were denied overtime premiums for off-the-clock work.

58. Plaintiffs seek conditional certification of the Collective Action, court-authorized notice to all Collective Action Members, and equitable tolling of the FLSA statute of limitations.

**FED. R. CIV. P. 23 CLASS ACTION ALLEGATIONS**

59. Pursuant to the NYLL, Plaintiffs bring their Second Cause of Action under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and the following class:

> All persons employed by D'Onofrio and/or its affiliated entities at any time since April 26, 2019 through the present (the "Class Period") who worked as laborers, mechanics, drivers, operators, operating engineers, teamsters, and foremen in New York State (the

"Class Members").

60. The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under Fed. R. Civ. P. 23.

61. The Class Members are so numerous that joinder of all members is impracticable.

62. Upon information and belief, there are in excess of one hundred (100) Class Members.

63. The questions of law and fact common to the Class predominate over any questions solely affecting the individual members of the Class. These common questions include, but are not limited to:

a. whether Defendants employed Plaintiffs and the Class Members within the meaning of the NYLL;

b. whether Defendants failed to keep true and accurate time records for off-the-clock work by Plaintiffs and the Class Members;

c. whether Defendants failed to pay Plaintiffs and the Class Members for all hours worked in excess of forty (40) hours in a given workweek;

d. whether Defendants required Plaintiffs and the Class Members to report to a D'Onofrio Yard approximately one (1) hour before job-site start time;

e. whether the Yard-Reporting Policy constituted a uniform off-the-clock work requirement applicable to Plaintiffs and the Class Members;

f. whether pre-shift work performed at the Yards or other mandated locations—including loading equipment, receiving assignments, staging materials, and pre-drive inspection—constitutes compensable "principal activity" work under the

NYLL;

g. whether travel between the Yards or other off-site locations and the job sites are compensable under NYLL and its regulations;

h. whether time spent transporting, returning, parking, securing, and documenting Defendants' vehicles, machinery, and heavy equipment is compensable under the NYLL and its regulations;

i. whether Defendants operated as a single integrated enterprise and jointly employed Class Members;

j. whether damages can be calculated using common evidence such as job-site logs, vehicle GPS data, and uniform schedules;

k. whether Defendants' failure to pay overtime premiums for off-the-clock Yard and travel time was willful; and

l. whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory damages, liquidated damages, interest, costs and disbursements and attorneys' fees.

64. Plaintiffs' claims are typical of the Class Members' claims because they, like all Class Members, were required to report to a Yard or other mandated location before heading to job sites, perform uncompensated pre-shift work, travel without pay between the Yards and job sites, and were denied overtime wages for off-the-clock work, which constitutes hours worked in excess of forty (40) in a workweek.

65. Plaintiffs and their Counsel will fairly and adequately represent the Class. There are no conflicts between Plaintiffs and the Class Members, and Plaintiffs bring this lawsuit out of a desire to help all Class Members, not merely out of a desire to recover their own damages.

66. Plaintiffs' counsel are experienced class action litigators who are well-prepared to

represent the interests of the Class Members.

67. A class action is superior to other available methods for the fair and efficient adjudication of this litigation.

68. Defendants are a sophisticated business with substantial resources. The individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit against the corporate Defendants.

69. Because Defendants maintained centralized policies, records, and supervisory structures, this action is eminently manageable as a Rule 23 class action.

70. The individual members of the class have no interest or capacity to bring separate actions; it is desirable to concentrate the litigation in one case; and there are no likely difficulties that will arise in managing the class action. Plaintiffs are unaware of any other currently pending litigation concerning this controversy.

## ADDITIONAL FACTUAL ALLEGATIONS

**Plaintiffs and the Collective and Class Members Were Not Paid Wages for All Hours Worked.**

71. During their respective employment periods, Plaintiffs and the Collective and Class Members did not receive wages for all hours worked at their regular rate or overtime premiums of one and one-half (1.5) times their hourly rates for all hours worked in excess of forty (40) in a week.

72. During their respective employment periods, Plaintiffs and the Collective and Class Members were typically required to arrive at one of the Defendants' Yards or other mandated locations significantly in advance of the start of their scheduled shifts at the jobsite in order to perform work such as checking in with their foremen, including but not limited to "Polak," James Daggett, and Andre Silva, receiving their work assignments from them, loading and unload the trucks with materials, equipment, and tools needed for the day, and retrieve equipment for

operation.

73. In addition, Garcia and those Collective and Class Members who were required to drive one of Defendants' trucks, vehicles or machinery (collectively, the "Drivers") were required to perform pre-drive inspections, which included checking the operation of the truck or machinery, checking the brakes and wheels, filling the gas tank, taking a pictures of their assigned vehicle and its milage both the morning and afternoon, and uploading those pictures through the Samsara App. These tasks were mandatory for the Drivers, were recorded by Defendants, and necessary for the operation of Defendants' vehicles.

74. Similarly, Salamone and other operators, and operating engineers (collectively, the "Operators") were required, where applicable, to transport Defendants' heavy equipment, including backhoes and other machinery, to and from jobsites. This transportation of Defendants' equipment was performed for Defendants' benefit and was integral and indispensable to Defendants' construction and utility operations.

75. While Salamone received a flat payment of one (1) hour of additional compensation for transportation time during the workweek, Defendants did not track the actual time he spent transporting the backhoe and failed to compensate him for the full time spent transporting the backhoe before and after his day's shift. Defendants also failed to pay Salamone any wages whatsoever for travel time for work performed on Saturdays and Sundays.

76. Defendants tracked equipment through GPS and cameras, including equipment operated by Plaintiffs, Drivers and Operators, but nevertheless failed to record or pay all compensable equipment transport, return, parking, and securing time.

77. Plaintiffs and the Collective and Class Members were then required to leave the Yard in time to arrive at the job site by approximately 7:00 a.m., where they performed manual construction work with the crew on the job sites until the end of the work day, typically finishing

at approximately 3:30 p.m. for an eight (8) hour shift at the jobsite.

78. Subsequently, the Drivers, including Garcia, were required to drive the Defendants' trucks back to the Yards at the end of the day. The Drivers typically returned to the Yards between 4:30 p.m. to 5:00 p.m., and sometimes later, depending on the distance and traffic between the job site and the Yards.

79. Similarly, Salamone and other Operators were required to remain at the jobsite until the conclusion of their scheduled shifts and, only then, transport, return, park, and secure Defendants' heavy equipment at designated locations. Defendants failed to compensate them for the time spent performing these required post-shift duties.

80. Throughout the relevant time period, notwithstanding the fact that Plaintiffs and the Collective and Class Members were required to report to and perform work at Defendants' Yards at the start of their shift prior to traveling to the job sites, Drivers including Garcia were required to return to the Yards at the end of the day, and Operators including Salamone were required to transport, return, park, and secure equipment, Plaintiffs and the Collective and Class Members were only paid for time spent working at the job sites.

81. Some, but not all, Drivers and Operators received a modest additional payment for "travel time." For instance, Garcia was paid sixty dollars ($60) in cash per day for travel time. Similarly, Salamone received one (1) hour of additional compensation for morning transportation time, but only Monday through Friday. However, Garcia, like other Drivers, was required to spend significantly more than one (1) hour per day performing work at the Yards every morning and traveling between the Yards and the jobsites after each shift. Similarly, Salamone was required to transport the backhoe back to its designated parking location after the conclusion of each workday, but Defendants failed to compensate him for that return transportation time and did not pay him any transportation time for work performed on Saturdays and Sundays. As such, even though

Garcia, Salamone, and certain other Drivers and Operators received modest additional compensation for certain travel-related work, those payments fell far short of compensating them for all off-site hours worked.

82. This modest payment was entirely off the books, represented a small fraction of the total off-site work time, and was not reflected on wage statements issued by Defendants. The use of these cash payments demonstrates Defendants' knowledge of work performed by Plaintiffs and the Collective and Class Members outside the jobsite and willful failure to compensate employees in accordance with the law for such work. In addition, when Salamone complained about not receiving any travel time for weekend work, Defendants took him off the schedule for weekend work for approximately one and one-half (1.5) months. As such, Defendants were well aware that they were paying Drivers and operators/operating engineers for fewer hours than they actually worked.

83. Thus, Plaintiffs and the Collective and Class Members were not fully compensated or not paid at all for all time spent working at D'Onofrio's Yards and time spent traveling between the Yards and job sites, notwithstanding that this mandatory work time was performed strictly for Defendants' benefit.

84. Throughout the relevant time period, Defendants only recorded the work performed by Plaintiffs and the Collective and Class Members at the job sites, typically from 7:00 a.m. until 3:30 p.m. and did not record any work performed outside the job sites.

85. Thus, while Plaintiffs and the Collective and Class Members performed a total of approximately one and one-half (1.5) to two and one-half (2.5), and sometimes more, hours of work outside of the job sites each day, including time working at the Yards or other mandated off-site locations and the travel time between the Yards (or other off-site locations) and the job sites, Plaintiffs and the Collective and Class Members were not paid for these hours. As Plaintiffs and the

Collective and Class Members typically worked forty (40) hours or more per week on the job sites, they should have been paid overtime premiums for all unpaid off-site work.

86. At no point did Plaintiffs' and the Collective Members' and Class Members' paystubs reflect off-site hours worked. Thus, Defendants intentionally omitted all Yard work (or work at other off-site locations) and travel time from payroll records, concealing the true number of hours worked by Plaintiffs and the Collective and Class Members, violating NYLL recordkeeping requirements.

87. Defendants' violations were willful because they knowingly required off-the-clock work, issued off-the-books cash payments to certain Drivers and Operators, failed to pay overtime premiums of one and one-half (1.5) times their regular hourly rate for all hours worked in excess of forty (40) per week, maintained centralized control over worker schedules showing greater hours worked than paid, and failed to maintain accurate time records despite their obligation to do so under the NYLL. Defendants' corporate policies applied to all laborers, mechanics, drivers, operators, operating engineers, teamsters, and foremen employed by Defendants.

**FIRST CAUSE OF ACTION**
**FAIR LABOR STANDARDS ACT – UNPAID OVERTIME**
**(Brought on Behalf of Plaintiffs and the Collective Action Members)**

88. Plaintiffs, on behalf of themselves and the Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

89. Plaintiffs, on behalf of themselves and the Collective Action Members, allege that Defendants violated the overtime provisions of the FLSA 29 U.S.C. §§ 201 *et seq.*

90. Defendants violated the FLSA overtime rights of Plaintiffs and the Collective Action Members by improperly failing to pay overtime premiums of one and one-half (1.5) times employees' regular hourly rates for all hours worked in excess of forty (40) hours per week, by

requiring Plaintiffs and the Collective Action Members to perform substantial Yard work and unpaid travel between Yards and job sites.

91. By failing to pay overtime at a rate not less than one and one-half (1.5) times the regular rate of pay for work performed in excess of 40 hours per week, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a)(2).

92. Defendants' violations were willful because they knowingly enforced a mandatory Yard-Reporting Policy, required off-the-clock work, concealed compensable time by issuing off-the-books payments, and failed to maintain accurate time records despite possessing centralized control over schedules and supervision. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

93. Defendants' failure to pay overtime caused Plaintiffs and the Collective Action Members to suffer loss of wages and interest thereon. Plaintiffs and the Collective Action Members are entitled to recover from Defendants their unpaid overtime premium compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216 (b).

**SECOND CAUSE OF ACTION**
**<u>NEW YORK LABOR LAW – UNPAID OVERTIME</u>**
**(Brought on Behalf of Plaintiffs and the Class Members)**

94. Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

95. Plaintiffs, on behalf of themselves and the Class Members, allege violations of the overtime provisions of the NYLL.

96. Defendants violated the NYLL overtime rights of the Plaintiffs and the Class

Members by failing to pay overtime premiums consisting of one and one-half (1.5) times employees' regular hourly rates for all hours worked in excess of forty (40) hours per week, by refusing to compensate them for required Yard work and unpaid travel between Yards and job sites.

97. Defendants' violations of the NYLL were willful because they intentionally failed to record all hours worked, recorded only job-site hours despite mandating Yard work, required workers to travel as part of the workday without pay, and issued certain off-the-books payments to conceal compensable time.

98. Defendants' failure to pay overtime premium compensation caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon. Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs, on behalf of themselves and all other similarly situated Collective Action Members and Class Members, respectfully request that this Court grant the following relief:

a. Certification of this case as a collective action under 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, issuance of court-authorized notice to all Collective Action Members, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b), and ordering equitably tolling the statute of limitations for all putative opt-ins.

b. Certification of the NYLL claims as a class action pursuant to Fed. R. Civ. P. 23

(b)(2) and (3), appointment of Plaintiffs as Class Representative, and appointment of Plaintiffs' counsel as Class Counsel;

c. An order tolling the statute of limitations;

d. A declaratory judgment that Defendants' policies and practices, including the mandatory Yard-Reporting Policy that consisted of pre-shift work and failure to pay travel time are unlawful under the FLSA and NYLL;

e. An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from continuing the unlawful pay practices described herein and requiring compliance with federal and state wage-and-hour laws;

f. An award of unpaid overtime wages for all uncompensated Yard work and travel time by Plaintiffs and the Collective and Class Members;

g. An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

h. An award of compensatory under both the FLSA and NYLL based on Defendants' willful violations of wage-and-hour laws;

i. Reasonable attorneys' fees, expert fees, and costs pursuant to the FLSA, NYLL, and applicable law; and

j. Such other and further relief as this Court deems just, proper, and equitable.

**DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the complaint.

Dated: New York, New York

July 09, 2026

Respectfully Submitted,

**PELTON GRAHAM LLC**

By: ______________________

Brent E. Pelton
pelton@peltongraham.com
Taylor B. Graham
graham@peltongraham.com
111 Boadway, Suite 1503
New York, New York 10006
Telephone: (212) 385-9700
Facsimile: (212) 385-0800

*Attorneys for Plaintiffs and the putative FLSA Collective and Class*

**Notice of Shareholder Liability for Services Rendered**
**Pursuant to § 630 of the Business Corporation Law of New York**

Pursuant to § 630 of the New York Business Corporation Law ("NYBCL"), the ten (10) largest shareholders of **D'ONOFRIO GENERAL CONTRACTORS CORP., SCC INDUSTRIES CORP., and SUB-TECH SERVICES, LLC,** are hereby notified that Plaintiffs, on behalf of themselves and the putative FLSA Collective and Rule 23 Class, intend to enforce your personal liability as shareholders for all unpaid wages owed by the corporation for services performed during the six (6)-year period preceding the filing of the complaint.

This Notice is provided because NYBCL § 630 imposes personal liability upon the ten (10) largest shareholders of a domestic corporation for wages, salaries, and overtime compensation due to employees for services rendered while such shareholders held their ownership interests.

Plaintiffs seek to hold the ten (10) largest shareholders jointly and severally liable for all unpaid overtime wages owed to Plaintiffs and the putative Collective and Class Members for services performed during the statutory period preceding the filing of this action, including all related damages recoverable under the FLSA and NYLL.

This Notice is not exhaustive and does not limit any additional claims or remedies that may be available against shareholders or other liable parties under federal or state law.

Dated: July 10, 2026

B.E.P.
________________________
Brent. E. Pelton

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of **D'Onofrio General Contractors Corporation**, and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me overtime premium wages and all wages owed for all hours work, as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton Graham LLC without prepayment of costs or attorneys' fees. I understand that if plaintiff is successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.

DocuSigned by:
Salvatore Salamone
E54CEE30AA0E4EA...

Signature

Salvatore Salamone

Printed Name

**CONSENT TO BECOME PARTY PLAINTIFF**

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of **D'Onofrio General Contractors Corporation**, and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me overtime premium wages and all wages owed for all hours work, as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton Graham LLC without prepayment of costs or attorneys' fees. I understand that if plaintiff is successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.

[signature]
Signature

George Garcia
Printed Name